### J. B. MOSS v. THE STATE.

No. 16873. Delivered June 27, 1934.
Rehearing Denied (Without Written Opinion) October 17, 1934.
Reported in 74 S. W. (2d) 1014.

The opinion states the case.

*J. J. Fagan,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of arson, and his punishment assessed at confinement in the State penitentiary for a term of two years.

The facts, briefly stated, are substantially as follows: On the night of December 31, 1932, the appellant and his wife left their home in Athens intending to go to Dallas. Within a very short time after they had left Athens, fire was discovered in the appellant's home. The local fire department rushed to the scene of the fire and started to enter the building but found the doors locked and the windows fastened down. They

finally broke down the rear door, entered the house, and observed the fire in the attic running in certain directions. They made an entrance to the attic, not knowing at the time that there was an entrance to same, and found a bundle of papers saturated with coal oil and a candle melted down and spread over said papers. They also discovered coal oil on the ceiling and the walls. They also found a flashlight and a screw driver in the attic near the saturated papers, and under some bedding in a child's bed they found one of the appellant's suits of clothes carrying a strong odor of coal oil. An investigation of the kitchen cabinets and the drawers of the sideboard disclosed that there were very few dishes and very little silverware in the house. The closets disclosed that there was practically no wearing apparel in the house and the rooms contained a very small amount of furniture. The appellant was informed of the fire some time during the next day but he did not return to Athens. He went to West Texas with a man whom he did not know and whose name he did not learn, but returned to Dallas within a few days and then in the latter part of January, 1933, he left for the state of New Jersey where he remained until the month of July, 1933, when he returned to Dallas where he was arrested. Some time prior to the fire the appellant interviewed a local insurance agent with a view of obtaining $3500 worth of insurance on the contents of his home, but the agent declined to write the insurance, claiming that he did not have the value. Subsequently, the appellant's wife went to Dallas and secured $1500 insurance on the contents of their home, which was in force at the time of the fire.

By bill of exception No. 1 the appellant complains of the action of the trial court in permitting the district attorney on cross examination of the appellant's wife to ask her relative to an alleged statement she made to one W. F. Huffhines. This bill of exception does not disclose the contents of the alleged objectionable statement and therefore does not disclose any error.

By bill of exception No. 2 the appellant complains of the action of the trial court in permitting the district attorney on cross examination of the appellant's wife to ask her whether she took out and carried any insurance on the furniture alleged to have been in the house, to which she answered, "Yes sir, I took out insurance on the furniture in the sum of $1500." Similar testimony had theretofore been offered and introduced by the State, and the testimony objected to was already before the jury. Hence the bill of exception fails to disclose any error.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the district attorney on cross examination of the appellant to ask the appellant "whether he had had a fire in Oklahoma or New Jersey in connection with a Mr. Feldman," to which the appellant answered. "Yes, I stayed up in New Jersey until July. Mr. Feldman had a fire while I was up there. The fire did not start in the part of the house I was living in. I did not collect any insurance on it." It does not appear in what manner this testimony was prejudicial to the appellant. Mr. Feldman had a fire but the fire was not in that part of the house occupied by the appellant nor did the appellant have any insurance on any of the contents of the house nor did he endeavor to collect any insurance, and therefore the same could not have been hurtful or prejudicial to the appellant.

By bills of exception Nos. 4 and 7 the appellant complains of the action of the trial court in permitting Fred S. Peoples, a witness for the State, to identify a copy of a policy of insurance issued to Mrs. Bertha Moss, wife of the appellant, covering the furniture alleged to have been in the house which was burned, to which the appellant objected because the original policy of insurance was the best evidence and no effort had been made to produce it. Said witness testified that the original policy was not in the State of Texas but was in the State of New York, the home office. Under the circumstances, the court did not commit any error in permitting the introduction of the copy because the original was beyond the jurisdiction of the court and there was no legal way for the State to obtain the original. The same question raised here was before this court in the case of Haire v. State, 39 S. W. (2d) 70, which was decided adversely to the appellant's contention and is now the settled law of this State.

By bill of exception No. 5 the appellant complains of the action of the trial court in permitting the State on cross-examination of the appellant to ask him if he had not served time in the Oklahoma penitentiary, to which the appellant replied, "No sir, I have not been within the last 10 years serving in the Oklahoma penitentiary. I was received in February, 1922, under a seven year sentence." The bill of exception fails to show of what offense the appellant was convicted in Oklahoma. If it were of an offense involving moral turpitude, it was clearly admissible as affecting the credibility of the witness.

By bill of exception No. 6 the appellant complains of the action of the trial court in permitting the district attorney on

cross examination of the appellant to ask him whether he had been charged with the offense of arson in Hot Springs, Arkansas, or in any other state within the last 10 years, to which the appellant answered, "No sir, I am not charged with arson in Hot Springs, Arkansas. I have not been arrested for any other fire in the last ten years." We do not believe that the appellant's contention is well taken for the reason that the witness answered "no" to the interrogatory and there the matter ended. No effort was made to contradict him.

Bill of exception No. 8 fails to disclose just what questions the district attorney propounded to the appellant's wife in regard to the insurance carried by her on the furniture nor what answers, if any, she made to the same, and therefore the bill is insufficient.

By bill of exception No. 9 the appellant complains of the action of the trial court in permitting the district attorney to prove by the witness John Karnes, a deputy sheriff, that the sheriff of Henderson County, Texas, looked for the appellant from the time he got the capias for his arrest up to November, 1933, on the ground that it was an attempt to establish flight on the part of the appellant. We do not believe that this testimony was prejudicial to the appellant for the reason that the appellant had theretofore testified that he left in the latter part of January, 1933, and did not return to Texas until July, 1933. There is no testimony in the record that the appellant ever communicated with anyone at Athens from the time he left Dallas in January, 1933, until after he had returned to Dallas in July. Therefore, the fact that he left Dallas and went to New Jersey, remaining there for approximately six or seven months during which time he did not communicate with anyone at Athens, Texas, is a circumstance from which the jury could reasonably infer flight.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.